George Andrews, J.,
delivered the opinion of the court.
This bill is filed by John H. Hunter, “in behalf of himself and many citizens, tax-payers of said county, too numerous to be here stated,” against the Justices composing the County Court of Campbell County, and Archibald Myers, Revenue Collector of said county.
The bill alleges that said County Court entered into contracts with certain parties named, by which contracts said parties, in consideration of certain sums of money to be paid to them by said County Court, undertook to lay out, build, repair, or alter certain public roads in said county, and which are specified in the bill; and that said contractors have already fulfilled a portion of said contract.
It is further alleged that said County Court has levied a tax of twenty-five cents on every one hundred dollars of taxable property, and one dollar on every taxable poll in said county, to meet the indebtedness arising out of said contracts, and ordered said tax to be collected forthwith: that, in pursuance of said order, the said Myers, as revenue collector, has commenced the collection of said tax, and has already collected a considerable sum of money; that complainant is a tax-payer, resident in said county, and has been taxed under said levy; and said Myers threatens to proceed and collect the same from him by distraint of his goods.
The bill charges that the levying of said tax is il *51 legal and void, and will work irreparable injury to the complainant and the citizens of Campbell County; and prays that said County Court and said Myers be restrained fro.m collecting the said tax, and from paying over the amount already collected; and that the taxes already collected may be returned to the parties from whom the same had been collected, and for general relief. It does not appear that the roads in question run to, or connect with, any railroads in the county.
To this bill the defendants filed a demurrer, showing two causes of demurrer:
First, That the laws of this State give full power and authority to the County Courts to lay taxes for public roads where necessary; and,
Second, That said complainant has no right to enjoin the taxes already paid, it appearing that he is not one of the payers of such taxes.
Kb other ground of demurrer is sqfc forth.
The Chancellor overruled the demurrer, and granted an appeal, under the statute, to this cóurt.
The principal question in this case is as to the authority of the County Court to levy a tax for the purpose of laying out, altering and repairing public roads within the county.
The power to impose the tax in question, and for the purpose specified in the bill, is claimed for the County Court under the provisions of the Code; and it is not, and can not be, contended that such power exists independently of statutory provisions.
The counties of this State are, by the Code, declared to be corporations, and the Justices in the Coun *52 ty Court assembled, are the representatives of the county, and authorized to act for it: Code, section 402.
But these counties, exercising in certain local matters, a portion of the sovereign power of the State, act not in virtue of any inherent authority as corporations, but under a delegated authority, within the limits prescribed by the Constitution and laws, which constitute their charter: Cool. Const. Lim., 191.
The statutes of this State provide, with great minuteness and detail, a complete and perfected system for the opening, repair, working, and control of the public roads of the State; a system which, in its main features, has been in existence ever since the organization of our State government.
By the provisions of the statutes constituting this system, the establishment and general supervision of roads and ferries, water-courses, and local improvements, is intrusted to the County Court; and that court has power to order the laying out, alteration, or discontinuance, of public roads; such laying out, alteration, or discontinuance, to be effected through a jury, to be appointed by the County Court; and the damages assessed in favor of the land-owner to be assessed by the jury, and paid for by the county.
All free males, within certain ages and with certain specific exceptions, are required to work upon the roads. Overseers of roads are appointed by the County Court, the bounds of whose districts, and the persons bound to work upon the roads in such districts, respectively, are designated. The overseer is required to notify the hands thus assigned to him, to appear and *53 work upon the roads within his specified district; and all persons who fail thus to attend, are liable to a forfeiture. If the overseer fail to keep the roads within his district clear and in repair, he is liable to indictment.
Express provision is made by statute for the payment by the county, of the damages • assessed, to the owner of the land through which a road is laid out or altered, and for the payment of sundry other expenses in regard to roads. Ho such provision is any where made for the payment of the expense of opening or repairing the road thus laid out .or altered; but it is expressly provided that the Court may order the overseer to open the road; and it is made his.duty to summon the hands assigned to him, for the purpose of repairing or making such roads as are necessary.
It is, further provided that the overseer and his hands shall make bridges through swamps, and over small runs and creeks; but that bridges that cannot be built by the overseer and his assistants, shall be a county charge, to meet which a tax shall be levied; and that bridges or causeways, deemed too expensive to be made a county charge, may be declared toll-bridges or causeways, and the tolls thereon farmed out, to secure the building thereof.
The Act of 1860, eh. 90,- makes special provision for the repairs of bridges, levees, or causeways upon any public road at the expense of the county, but not for the making or repair of the road itself.
By these statutes, it is made the duty of the overseer to summon his hands, and with their labor, to open *54 all roads laid out under the orders of the County Court; to clear them of all obstructions, and to keep them clear and in repair; to provide foot-logs; to make causeways, where necessary; and to construct all such small bridges as are within the capacity of his hands; and no authority is anywhere given to the County Court to defray the expenses of these improvements from the treasury of the county.
Power is expressly given to the County Court to pay the damages assesssed to the owner of the land; to construct, at the expense of the county, bridges and causeways, in certain cases; to pay for erecting warning signs at railroad crossings; and to furnish to the overseers, at the expense of the county, the necessary implements and powder for breaking and blasting rock.
But, we search in vain for any statutory authority given to the County Court to expend any money, or create any liability against the county, for the expense of opening, making, or repairing a road, except as above stated. The Code, sec. 4215, provides that the County Court may appropriate moneys for sundry purposes therein specified; which includes building bridges, and purchasing tools for overseers; and sec. 4216 declares, that they shall not appropriate money for any other purpose, unless specially provided for by law.
From a consideration of these statutory provisions, the conclusion is too obvious to require more than its mere statement, that, in the careful system of road-law of this State, the Legislature intended to provide for the opening, making and repairing of public roads, in all ordinary cases, by the labor of the country, applied *55 under the direction of the overseers of roads; and that it is only in the special cases expressly provided for by the terms of the statutes, that the County Court is authorized to expend the funds, or use the credit of the county.
It is claimed, however, on behalf of the defendants, that if authority for their action be wanting elsewhere, it is found in section 1257 of the Code. That section is as follows:
“The County Court may provide for making such private and local improvements, within the limits of the county, as are contemplated by the eighth and ninth sections of the eleventh article of the Constitution, under such restrictions, limitations and conditions, as in its discretion shall seem right and proper; such as toll-bridges, causeways across bottoms, fish-traps, mill-dams, ferries, public roads, and the like.”
The Constitutional provisions referred to in this section are, briefly, and in substance, that the Legislature may vest powers in the Courts of Justice with regard to private and local affairs; and that a “well-regulated system of internal improvements ought to be encouraged by the General Assembly.”
The authority of the County Court under this section of the Code, has no reference to works of public improvement, to be undertaken, made and paid for by the county, but to those private enterprises undertaken with more or less reference to the public convenience, but for private gain, which require to be licensed, or may be regulated by the County Court, and are in the nature of privileges.
*56 This is evident from the section itself. The authority given is, not to make, but to provide for making. The improvements provided for are not local merely, but private and local. They are to be provided for “under such restrictions, limitations and conditions,” as the County Court may deem right — words appropriate to be used in regard to the granting of a privilege or a franchise — but not to the direct application of inherent power. The improvements instanced — unless the one in regard to “public roads” be an exception — are all those for the licensing or regulation of which, as privileges, careful and minute provision is made in the same portion of the Code in which this section is found; and the entire chapter of which this section is a part, is occupied with provisions in regard to the licensing and regulation of toll-bridges, mill-dams, fish-traps and ferries, as privileges to be held by individuals or corporations — except certain sections which authorize the County Court, upon petition being presented for that purpose, to contract for the building of bridges and causeways, at the expense of the county.
The true meaning of section 1257, of the Code, is made still more apparent by a reference to the Act of 1835, ch. 29, (Car. and Nich.,) 203, from which the substance of this section is transferred to the Code.
Section 1, of that Act, provides that the County Courts shall have power “to grant the privilege of erecting toll-bridges and causeways across bottoms, fish-traps or * * * * * * * mill-dams, and establishing public ferries and public roads, and making-such other private and local improvements as are con *57 templated by the 7th and 8th sections of the 11th article of the Constitution; and to fix the term to which said benefit or privilege shall extend; to fix the toll and rate of charge, which shall be allowed in such cases; and to impose such restrictions, limitations and conditions, as in their discretion shall seem right and proper.”
This section clearly has reference only to such quasi public enterprises as are in the nature of privileges, to be granted to and exercised by individuals or corporations; and we cannot suppose that, in incorporating its substance and most of its phraseology in the Code, the Legislature intended to change the whole scope of the Act, and make it apply to a totally different class of subjects and confer wholly different powers upon the County Court.
We have no doubt that the powers granted to or recognized in the County Courts,- are the same under these two sections; and that neither of them confers the power to undertake the general construction of public roads by the County Court, at the expense of the county.
The construction claimed for section 1257, of the Code, by counsel for the defendants, would authorize the County Court to construct with the funds of the county, fish-traps, mill-dams, and probably ferries, canals, and railroads — a consequence which no one will contend, coiüd ever have been intended by the Legislature.
We could hardly suppose, except from clear declarations of statute, that the Legislature intended to place it within the power of the County Courts, at their discretion to dispense with the carefully elaborated and long recognized road system of this State; *58 and to substitute another and totally diverse system, which would necessarily afford the most ample opportunity for fraud, unfairness and sectional oppression, particularly when such a construction has never — so far as we are advised — been claimed for the statute before. But, after a careful consideration of the statutes bearing upon the question, we are satisfied that our construction is correct, and do not feel that it is necessary to call in the aid of the considerations just suggested to relieve a doubt.
The imposition of the tax complained of in this case, was illegal and unauthorized, and the complainant is entitled to restrain its collection and enforcement against him
In regard to the question raised by the second ground of objection set forth in the demurrer, the frame of the bill is defective. It appears that the complainant has ndt paid the tax assessed against him; and he, of course, has no personal interest in the moneys in the hands of the Revenue Collector. The bill is not filed on behalf of the complainant, Hunter, and all others who are tax-payers in the county; but on behalf of “ many citizens, tax-payers of said county, too numerous to be here stated.” It does not appear what tax-payers of the county it is attempted to represent in this suit. Ho entire class is mentioned, and we cannot point to any citizen, and say that he is one of the “many citizens” intended. So far as it appears by this bill, all the parties whom the bill seeks to represent, may, like himself, have paid nothing, and have no interest in the moneys collected.
But this defect applies only to a part of the bill. *59 The complainant, Hunter, is still entitled to the relief prayed against the collection of the illegal tax against him; and the demurrer for this cause, going to the whole bill, is too broad, and was properly overruled: Fay vs. Jones, 1 Head, 442; Crowder vs. Denny, 3 Head, 359; Story’s Eq. Pl., sec. 443.
The decree of the Chancellor will be affirmed, and the cause remanded to the Chancery Court, where the Chancellor will have power to allow amendments in the pleadings, and the cause will be proceeded in.